1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   DEBORAH DOERFLER-CASNER,
                                    NO. CIV. S-03-1864 WBS KJM
12            Plaintiff,

13        v.                        MEMORANDUM AND ORDER RE:
                                    MOTION FOR JUDGMENT ON THE
14                                  PLEADINGS/MOTION FOR SUMMARY
                                    JUDGMENT
15
     PLACER COUNTY DEPARTMENT OF
16   PUBLIC WORKS,

17            Defendant.

18                        ----oo0oo----

19        Plaintiff Deborah Doerfler-Casner has brought suit

20   against defendant Placer County Department of Public Works,

21   alleging violations of Title VII of the 1964 Civil Rights Act, 42

22   U.S.C. §§ 2000e to 2000e-17 ("Title VII"), California's Fair

23   Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, and

24   42 U.S.C. § 1983, as well as state law torts.  Defendant now

25   moves for judgment on the pleadings pursuant to Federal Rule of

26   Civil Procedure 12(c) and, alternatively, for summary judgment

27   pursuant to Federal Rule of Civil Procedure 56.

28   ///

                              1

1   I.    Factual and Procedural Background

2          From June 6, 1990 until February 3, 2003, plaintiff

3   worked as the only woman on the traffic sign maintenance crew

4   managed by defendant's organization.  (Compl. ¶ 9; Def.'s

5   Statement of Undisputed Facts ("SUF") No. 6.)  During this

6   period, plaintiff applied for, and was denied, promotions to more

7   senior positions on two occasions: in July, 1999, an available

8   Senior Traffic Sign Supervisor position went to Greg Jacinto and

9   in November, Dave Taylor was promoted to Senior Traffic Sign

10  Maintenance Worker.  (SUF Nos. 69-70.)

11         Following Jacinto's promotion, plaintiff learned that

12  one of the reasons she was not selected was because she needed

13  more experience on the striper.[1]  (Id. No. 10.)  Plaintiff's

14  repeated requests for striper training were, however, summarily

15  denied.  (Rathe Decl. Ex. B (Perrigo Report) (documenting

16  plaintiff's requests).)  Meanwhile, Taylor received the necessary

17  training.  (SUF No. 15.)  Eventually Jacinto, plaintiff's new

18  supervisor, relented and gave her the opportunity to operate the

19  striper, although this "opportunity" consisted of a "brief"

20  training before being sent out on the roads.[2]

21         Plaintiff further claims that her work hours were

22  changed and that she alone was assigned to jobs that were

23  _____

24      [1]   A "striper" is a machine used to paint lines on
    roadways.
25

26      [2]   The actual duration of plaintiff's training is unclear,
    largely as a result of her own inconsistent testimony and claims.
    She alleged that the training took place for just 15 minutes,
27  (Rathe Decl. Ex. A (Doerfler-Casner County Compl.)), and later
    testified that it lasted "a couple of hours" (Doerfler-Casner
28  Apr. 27, 2006 Dep. 115:12-14).

                                    2

1   allegedly dangerous for a person to do individually.  (Doerfler-

2   Casner Apr. 27, 2006 Dep. 138:1-18 (describing a co-worker's

3   concern for her safety, given her assigned work).)  She also

4   claims that she was threatened prior to applying for more senior

5   positions and that after she applied, her male co-workers started

6   giving her the cold shoulder.  (See, e.g., Huskey Decl. Ex. A

7   (Doerfler-Casner Nov. 23, 2004 Dep. 90:4-10, 103:2-23, 138:22-

8   25).)

9          Plaintiff further complains of physical abuse in the

10  workplace.  She describes two incidents, one where she was hit by

11  a wheeled chair that Stan Kirkman sent sailing across the room

12  during a heated argument and another where she was kicked in the

13  buttocks by Lynn Steevers.  (Compl. ¶¶ 12-13.)  As a result of

14  the kicking incident, plaintiff missed several weeks of work.

15  (SUF No. 16.)  Moreover, she was particularly upset by the

16  official report of the incident, which stated: "Lynn and Debbie

17  were having fun bantering back and forth when Lynn playfully side

18  kicked Debbie in the buttocks."  (Rathe Decl. Ex. A (Doerfler-

19  Casner County Compl.).)  According to plaintiff, this

20  characterization was inaccurate.  Rather, Steevers kicked her

21  because he was irritated with her.  (SUF No. 16.)  Steevers

22  received a simple verbal reprimand for his conduct.  (Huskey

23  Decl. Ex. H (Steevers Dep. 21:18-25, 22:1-16).)

24          Finally, plaintiff also describes various comments that

25  offended her.  For example, she testified that her co-worker Mike

26  Eastman would say things like "This is a man's job; let a man do

27  it."  (Id. Ex. A (Doerfler-Casner Nov. 23, 2004 Dep. 104:21-22).)

28  Additionally, various male co-workers made comments about

1  plaintiff's weight and her assumed menopause-related moodiness.

2  (Id. at 154:16-25, 158:16-20.)

3          Plaintiff kept notes on these incidents in her work

4  diary, which her employer required her to maintain and her co-

5  workers resented.  (SUF Nos. 34-36, 42; Doerfler-Casner Apr. 27,

6  2006 Dep. 135:5-9, 17-18 (threat by Kirkman).)  In particular,

7  Eastman commented that he was "scared" that the events documented

8  in plaintiff's diary would "come back and haunt them."

9  (Doerfler-Casner Apr. 27, 2006 Dep. 123:14-20.)  Subsequently,

10 plaintiff did file her complaint in this action, alleging eleven

11 causes of action including: sexual harassment, actionable under

12 Title VII (claim one); sexual harassment and failure to prevent

13 sexual harassment, actionable under FEHA (claims two and four);

14 violation of her First, Fourth, Fifth, and Fourteenth Amendment

15 rights, actionable under 42 U.S.C. § 1983 (claims five through

16 nine); and state law claims of negligence, battery, and assault

17 (claims ten, eleven, and twelve).[3]  Defendant now moves for

18 judgment on the pleadings, or alternatively for summary judgment,

19 on all of plaintiff's claims.

20 II.  Discussion

21         Although defendant fails to specify which arguments

22 pertain to its motion for judgment on the pleadings and which

23 pertain to its motion for summary judgment, plaintiff provides a

24 logical grouping that the court will adopt for purposes of this

25 motion.  It appears that defendant's motion for judgment on the

26 pleadings addresses only claims five, six, seven, and nine--the §

27

28         [3]  Plaintiff has not included a third claim--the complaint
jumps from claim two to claim four.

4

1983 claims not based on the <u>Monell</u> theory of liability.  <u>See</u>
<u>Monell v. Dep't of Soc. Servs. of New York</u>, 436 U.S. 658 (1978).
Defendant's arguments for summary judgment attack plaintiff's
remaining claims.[4]

     A.   <u>Judgment on the Pleadings</u>

          Judgment on the pleadings is appropriate after the
pleadings have closed when, on the face of those pleadings,
accepting the allegations of the non-moving party as true, no
material issue of fact remains to be resolved.  <u>See</u> Fed. R. Civ.
P. 12(c); <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>,
896 F.2d 1542, 1550 (9th Cir. 1990).  Under such circumstances,
the moving party can obtain judgment as a matter of law.  <u>Hal</u>
<u>Roach Studios</u>, 896 F.2d at 1550.  However, a Rule 12(c) motion is
essentially equivalent to a Rule 12(b)(6) motion to dismiss[5] and

---

[4]    This matter was originally scheduled to be heard on
April 17, 2006.  However, on April 10, 2006, defendant filed
thirty-six objections to statements in plaintiff's declaration
(submitted in opposition to defendant's motion) and moved to
strike the portions of this declaration to which it objected.  In
an effort to ensure that the outcome here is determined by the
merits of the case, rather than on a mere misstep by counsel in
preparing plaintiff's declaration, the court used the scheduled
oral argument to address defendant's evidentiary objections.  At
that proceeding, defendant agreed to withdraw its objections,
provided that plaintiff agreed to allow defendant's counsel to
depose her once more.  Plaintiff consented, and the requested
supplemental deposition was conducted on April 27, 2006.
Consequently, according to the deal struck by the parties, any
evidentiary objections in this matter have been resolved.  The
court can now address the merits of the pending motion.

[5]    The motions differ in only two respects:
(1) the timing (a motion for judgment on the pleadings
is usually brought after an answer has been filed,
whereas a motion to dismiss is typically brought before
an answer is filed) . . . and (2) the party bringing
the motion (a motion to dismiss may be brought only by
the party against whom the claim for relief is made,
usually the defendant, whereas a motion for judgment on

consequently, a district court may "dispos[e] of the motion by
dismissal rather than judgment." Sprint Telephony, 311 F. Supp.
2d at 903.  "[D]ismissal can be based on either the lack of a
cognizable legal theory or the absence of sufficient facts
alleged under a cognizable legal theory." Id.; see also
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
1988).

        Dismissal of claims five through seven and claim nine
is appropriate because defendant, a municipal entity, is the only
named defendant and cannot be the target of a § 1983 claim absent
allegations that an "official municipal policy of some nature
caused a constitutional tort." Monell, 436 U.S. at 691 ("[A]
municipality cannot be held liable solely because it employs a
tortfeasor--or, in other words, a municipality cannot be held
liable under § 1983 on a respondeat superior theory.").  Claims
five through seven and claim nine lack such allegations.[6]
However, this dismissal is largely a formality because plaintiff
states a proper Monell claim against defendant in claim eight,
where she alleges that the aforementioned acts, including the
violations of her First, Fourth, Fifth, and Fourteenth Amendment
rights described in claims five through seven, "were the direct
and proximate result of customs, practices, and/or policies of
Defendant . . . ." (Compl. ¶ 39.)  Consequently, although the
court grants defendant's Rule 12(c) motion as to claims five,

_____

        the pleadings may be brought by any party).
Sprint Telephony PCS, L.P. v. County of San Diego, 311 F. Supp.
2d 898, 902-03 (S.D. Cal. 2004) (citations omitted).

        [6]    Confusingly, these causes of action refer to the
actions of "defendants" when only one defendant has been named.

six, seven, and nine, this order will have little, if any, impact
on the substantive issues in this case.

B.   Summary Judgment

Defendant's remaining arguments appear to be for
summary judgment since they rely on evidence that goes beyond the
pleadings.  Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  A material fact is one that could affect the outcome of
the suit, and a genuine issue is one that could permit a
reasonable jury to enter a verdict in the non-moving party's
favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  The party moving for summary judgment bears the initial
burden of establishing the absence of a genuine issue of material
fact and can satisfy this burden by presenting evidence that
negates an essential element of the non-moving party's case.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
Alternatively, the movant can demonstrate that the non-moving
party cannot provide evidence to support an essential element
upon which it will bear the burden of proof at trial.   Id.

Once the moving party meets its initial burden, the
non-moving party must "go beyond the pleadings and by her own
affidavits, or by 'the depositions, answers to interrogatories,
and admissions on file,' designate 'specific facts showing that
there is a genuine issue for trial.'"  Id. at 324 (quoting Fed.
R. Civ. P. 56(e)).  The non-movant "may not rest upon . . . mere

7

1   allegations or denials of the adverse party's pleading . . . ."

2   Fed. R. Civ. P. 56(e); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135,

3   1137 (9th Cir. 1989).   However, any inferences drawn from the

4   underlying facts must be viewed in a light most favorable to the

5   party opposing the motion.   <u>Matsushita Elec. Indus. Co., Ltd. v.</u>

6   <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).   Additionally, the

7   court must not engage in credibility determinations or weigh the

8   evidence, for these are jury functions.   <u>Anderson</u>, 477 U.S. at

9   255.

10          1.   <u>Claims One, Two, and Four--Sexual Harassment</u>

11          Defendant moves for summary judgment on plaintiff's

12   gender based discrimination claims, arguing that the alleged

13   sexual harassment was not severe or pervasive.   These claims are

14   founded on alleged violations of federal and state employment

15   discrimination laws (Title VII and FEHA), which are largely

16   analyzed according to the same standards.   <u>Fisher v. San Pedro</u>

17   <u>Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 608 (1989) (adopting

18   federal case law for hostile environment sexual harassment claims

19   under California law).

20   _____ "An employer is liable under Title VII for conduct

21   giving rise to a hostile environment where the employee proves

22   (1) that [s]he was subjected to verbal or physical conduct of a

23   harassing nature, (2) that this conduct was unwelcome, and (3)

24   that the conduct was sufficiently severe or pervasive to alter

25   the conditions of the victim's employment and create an abusive

26   working environment."   <u>Pavon v. Swift Trans. Co., Inc.</u>, 192 F.3d

27   902, 908 (9th Cir. 1999) (citing <u>Meritor Savings Bank, FSB v.</u>

28   <u>Vinson</u>, 477 U.S. 57, 67 (1986)).   Courts identify abusive working

8

environments "by 'looking at all the circumstances,' including
the 'frequency of the discriminatory conduct; its severity;
whether it is physically threatening or humiliating, or a mere
offensive utterance; and whether it unreasonably interferes with
an employee's work performance.'" Faragher v. Boca Raton, 524
U.S. 775, 787-88 (1998) (quoting Harris v. Forklift Sys., Inc.,
510 U.S. 17, 23 (1993)).  In general, "the required showing of
severity or seriousness of the harassing conduct varies inversely
with the pervasiveness or frequency of the conduct." Ellison v.
Brady, 924 F.2d 872, 878 (9th Cir. 1991).

        As previously noted by this court, "[t]he first element
of the hostile environment claim requires that the harasser's
conduct be . . . either sexual in nature or perpetrated because
of the recipient's gender." Davis v. Cal. Dep't of Corrections,
No. S-93-1307, 1996 WL 271001, at *7 (E.D. Cal. Feb. 23, 1996)
(citing Robinson v. Jacksonville Shipyards, Inc., 760 F. Supp.
1486, 1522-23 (M.D. Fla. 1991) (listing cases holding that
harassment was based on sex where conduct lacked sexually
explicit conduct but was motivated by animus against women)); see
also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80
(1998) ("[H]arassing conduct need not be motivated by sexual
desire to support an inference of discrimination on the basis of
sex.").  Plaintiff has testified to and/or declared the following
facts in support of her harassment claims:

•     In 1999, a male co-worker threatened to kill her if she was
      promoted to the senior position, although plaintiff did not
      expect him to act on this comment.  (SUF No. 14.)

•     Also in 1999 and in 2000, plaintiff repeatedly requested

training on the striper.  She was initially told she was too short and a male co-worker was trained instead.  Sometime in 2000, plaintiff received a brief (30-45 minute) training and was immediately sent out on a job, where Eastman proceeded to honk at her from another vehicle for the purpose of "f-ing with her."  (SUF No. 25.)

- On October 30, 2000 and September 9, 2002, plaintiff was battered by male co-workers.  (SUF Nos. 49.)

- Co-worker Eastman "exhibited anger" toward plaintiff on at least 10 occasions.  (SUF No. 27.)

- On up to 10 occasions, Eastman made the comment: "This is a man's job, let a man handle it."  (SUF No. 28.)  Plaintiff informed her supervisor of these comments.  (Pl.'s Add'l SUF No. 33.)

- One morning, plaintiff's husband observed Eastman going through her truck, which was parked outside her home.  This was against company policy.  (SUF Nos. 29-30.)

- One day, while working together on a road crew assignment, Eastman ignored plaintiff's attempts to get his attention.  (SUF No. 33.)

- On one occasion, plaintiff's supervisor, Jacinto commented on plaintiff's recent moodiness and asked if she was going through menopause.  (SUF No. 40.)

- On June 14, 2000, Jacinto broadcast some of the contents from plaintiff's work diary over the radio. (Pl.'s Add'l SUF No. 10.)

- On February 27, 2001, Jacinto told plaintiff to "watch it" with respect to her diary entries.  (Pl.'s Add'l SUF No.

1    18.)

2  •  On August 9, 2001, Kirkman made a derogatory remark about

3     plaintiff's weight.  He also threatened her at some point,

4     telling her to "watch out".  (SUF Nos. 42-43; (Pl.'s Add'l

5     SUF No. 20.)

6  •  On August 23, 2001, Jacinto allowed a male co-worker to

7     apply his overtime hours to the next pay period, but denied

8     plaintiff's request to do the same.  (Pl.'s Add'l SUF No.

9     24.)

10  •  Starting in 2001, plaintiff's time records were scrutinized

11     by her supervisor while those of male counterparts,

12     allegedly, were not.  (Pl.'s Add'l SUF No. 28.)

13  •  Starting on September 10, 2001, plaintiff no longer received

14     standby assignments (additional wage-earning opportunities)

15     that went instead to male co-workers.  (Doerfler-Casner

16     Decl. ¶ 25.)

17  •  On September 12, 2002, Jacinto assigned plaintiff to work

18     alone on a job that plaintiff felt required two people.

19     (Rathe Decl. Ex. D (Stannard Report at 3).)

20  •  "[V]erbal abuse and harassment by Mike Eastman" led

21     plaintiff to take stress leave from September 12, 2002 until

22     February 3, 2003.  (Pl.'s Add'l SUF No. 42.)  When plaintiff

23     returned, she was assigned to a job in another building.

24        Most, if not all, of the incidents described are not

25  sexual in nature and consequently, the court assumes that

26  plaintiff's claims are based on the theory that harassment was

27  perpetrated because of the recipient's gender.  Defendant argues

28  that the majority of these incidents, including both physical

11

1  assaults, "have no gender based element whatsoever" and could
2  have happened to anyone.  (Def.'s Mot. for J. 12.)  Defendant
3  further argues that the remaining incidents, such as the
4  menopause and "man's job" comments, which are admittedly gender
5  specific, do not meet the severe or pervasive requirement.  (<u>Id.</u>
6  at 14.)

7        However, the fact that a man <u>could</u> have been put in the
8  same position as plaintiff, and subject to the same physical and
9  verbal abuse, does not prove that a man ever <u>was</u>.  Defendant has
10 not produced any evidence demonstrating that men were subject to
11 the same treatment as plaintiff.  "Fat jokes [may] apply to both
12 sexes," but defendant has not shown, or even suggested, that they
13 <u>were</u> applied to both sexes in this case.  (<u>Id.</u> at 13.)  Moreover,
14 defendant has not produced evidence that men were ever battered
15 by their co-workers.  <u>Cf. Oncale</u>, 523 U.S. at 80 ("The critical
16 issue . . . is whether members of one sex are exposed to
17 disadvantageous terms or conditions of employment to which
18 members of the other sex are not exposed." (quoting <u>Harris</u>, 510
19 U.S. at 25 (Ginsburg, J., concurring))).

20       At most, the court has before it conflicting testimony
21 regarding whether some incidents involving plaintiff were
22 actually abnormal or took place as described by plaintiff.  For
23 example, although plaintiff complains that she was given solo
24 assignments that really required two people, several deposed co-
25 workers testified that jobs similar to the one described by
26 plaintiff were routinely assigned to a single person who could
27 "ask for help" if needed.  (Rathe Decl. Ex. D (Stannard Report at
28 3).)  To resolve these conflicting accounts, the court would need

to make a credibility determination, which would invade the province of the jury.[7]   Additionally, it is not clear that plaintiff was denied training, given that according to her own records, she turned down opportunities because she was "bleeding bad" and/or injured.  (Id. Ex. B at 000301-02.)  Again, sorting out what really happened based on conflicting accounts is the jury's job.

Viewing the facts presented thus far in a light most favorable to plaintiff, a reasonable juror could find that plaintiff was the target of harassing conduct because of her gender.  But this possibility alone is not sufficient to survive summary judgment, for as outlined above, the conduct must also be severe or pervasive, based on an objective and subjective standard, to constitute harassment because of sex.  Harris, 510 U.S. at 21.

Based on plaintiff's pursuit of internal and external complaints regarding her alleged harassment, she obviously subjectively believes she was the victim of a hostile environment.  (See also Rathe Decl. Ex. D (Stannard Report at 5 (observing that plaintiff "truly believes she has been discriminated against").)  Moreover, her repeated stress-related medical leaves further support an inference that she subjectively found her workplace severely or pervasively hostile.  (See, e.g.,

---

[7]     Defendant concedes as much in its pretrial statement filed on April 18, 2004, wherein it notes that disputed issues of fact remaining for trial include "[t]he credibility of the plaintiff's reports of alleged misconduct by her co-workers" and "[t]he occurrence of plaintiff's specific claims of misconduct by employees of the County of Placer" (at least those instances that defendant has not conceded did occur).  (Def.'s Pretrial Stmt. 13-14.)

Pl.'s SUF No. 60 (describing leave of absence from September, 2002 until February, 2003); Id. No. 64 (plaintiff went on leave again in May, 2005).)   The more difficult question is whether her workplace was objectively hostile or abusive.   To determine this, the court looks at the situation from the perspective of the reasonable female victim.   Harris, 510 U.S. at 21; Ellison, 924 F.2d at 879.

Here, plaintiff has been the subject of physical abuse and jokes, she has been threatened, and she may have been denied employment on equal terms with male co-workers.   Defendant does not dispute that these incidents first started occurring shortly after plaintiff applied for, and was denied, her first promotion to a supervisory position.   A jury could very well find that a reasonable woman in an all-male department could perceive these actions as designed to "keep [her] from advancing in [her] career[]."[8]   Harris, 510 U.S. at 22.   Moreover, while incidents may not have occurred on a daily basis, they did occur with some regularity.   In some instances, the conduct alleged actually involved physical attacks on plaintiff's person.   Consequently,

---

[8]   Defendants offer a competing theory for plaintiff's treatment: her co-workers were simply motivated by personal dislike/distrust of plaintiff, rather than gender based animus. Although a jury could find that the conduct alleged resulted from co-workers' frustration with plaintiff's habit of documenting the misconduct of others in her work diary, see Barnett v. Dep't of Veterans Affairs, 153 F.3d 338, 342-43 (6th Cir. 1998) ("[P]ersonal conflict does not equate with discriminatory animus."), this possibility does not foreclose a conclusion that defendant's employees singled plaintiff out for unfavorable treatment because she was a woman.   See Mosakowski v. PSS World Med., Inc., 329 F. Supp. 2d 1112, 1122 (D. Ariz. 2003) ("Harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. The motivation can be a general hostility to the presence of women in the workplace.").

drawing all inferences in favor of plaintiff, the court cannot say with certainty that the conduct alleged was not severe or pervasive.  Cf. Pappas v. J.S.B. Holdings, Inc., 392 F. Supp. 2d 1095, 1103-05 (D. Ariz. 2005) (holding that pranks (e.g., "messing with" plaintiff's workstation, stapling all of her business cards together), smirks, and ostracism, combined with a few instances of gender-based epithets are sufficient, "albeit minimally so," to permit a reasonable juror to conclude that an acrimonious work situation existed because of plaintiff's gender); Vandermeer v. Douglas County, 15 F. Supp. 2d 970, 980 (D. Nev. 1998) ("It is, of course, impossible to formulate a bright line rule for when a hostile environment exists.  But it doesn't take much to survive summary judgment in an employment discrimination case, since the standard that the defendants must meet to prevail at this stage is quite high." (citing Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996))).

        The court's inquiry is still not complete, however, until it determines that the employer can be held liable for "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known."  Ellison, 924 F.2d at 881.  In the Ninth Circuit, the sufficiency of an employer's response to allegations of sexual harassment is judged by (1) whether the harassment stopped following the employer's remedial actions and (2) whether the response was calculated to dissuade other potential harassers from pursuing unlawful conduct.  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing Ellison, 924 F.2d at 882).

1    The parties do not dispute that management was well
2  aware of plaintiff's complaints.  Both formally, and perhaps
3  informally, plaintiff communicated her grievances to her direct
4  supervisors, their supervisors, and her supervisors' supervisors.
5  In response, defendant conducted two investigations and in many
6  instances found no evidence to support plaintiff's allegations of
7  harassment, retaliation, and failure to promote.  (Rathe Decl.
8  Ex. B (Perrigo Report), Ex. D (Stannard Report).)  Defendant also
9  took disciplinary action against the two perpetrators of physical
10  abuse against plaintiff and additionally held a mandatory
11  training for employees "aimed at preventing sexual harassment,
12  violence and retaliation in the workplace" on January 11, 2001
13  (following the incident where plaintiff was kicked by Steevers).
14  (Rathe Decl. Ex. B (Perrigo Report at 10); SUF Nos. 65, 88.)

15    However, despite these efforts, plaintiff continued to
16  document instances where she felt harassed.  If a jury finds that
17  the conduct complained of constituted sexual harassment, then it
18  will follow that defendant can be held liable for failing to
19  actually put a stop to it.  Consequently, summary judgment on
20  plaintiff's first, second, and fourth causes of action is not
21  warranted.

22    2.   Claim Eight--Municipal Liability Under § 1983

23    Defendant also moves for summary judgment on claim
24  eight, plaintiff's Monell claim, contending that the alleged
25  misconduct of plaintiff's co-workers and direct supervisors was
26  "immediately addressed" and therefore any constitutional
27  violation was not caused by defendant's official policies.
28  (Def.'s Mot. for J. 6.)  However, as previously discussed, it is

1  not clear from the facts presented thus far that plaintiff's

2  allegations of harassment were <u>adequately</u> addressed immediately,

3  if ever.  Because triable issues of fact remain as to whether

4  defendant had a policy or practice that violated plaintiff's

5  constitutional rights, the court must deny summary judgment on

6  this cause of action.

7              3.   <u>Claims Ten through Twelve--State Law Torts</u>

8           Defendant further contends that the exclusivity

9  provisions in California's worker's compensation law, Cal. Lab.

10  Code §§ 3200-6002, "bar[] Plaintiff's pendant state common law

11  torts claims for negligence, assault, and battery." (Def.'s Mot.

12  for J. 7.)  Indeed, the worker's compensation statute does

13  provide the sole and exclusive remedy for injuries, both physical

14  and mental, that arise from conduct "within the compensation

15  bargain" (or within the scope of employment) and that result in

16  an occupational disability or the need for medical treatment.

17  Cal. Lab. Code §§ 3600(a), 3602(a); <u>Charles J. Vacanti, M.D.,</u>

18  <u>Inc. v. State Comp. Ins. Fund</u>, 24 Cal. 4th 800, 814 (2001)

19  (noting that when these two conditions are met, "the workers'

20  compensation system subsumes all statutory and tort remedies

21  otherwise available for such injuries"); <u>Livitsanos v. Superior</u>

22  <u>Court</u>, 2 Cal. 4th 744, 752 (1992).  However, "a cause of action

23  predicated on an injury where 'the basic conditions of

24  compensation' are absent is not preempted." <u>Charles J. Vacanti</u>,

25  24 Cal. 4th at 814.  Additionally, "[a]n employee . . . may bring

26  an action at law for damages against the employer, as if this

27  division did not apply, . . . [if] the employee's injury or death

28  is proximately caused by a willful physical assault by the

1  employer."  Cal. Lab. Code § 3602(b)(1).

2        California's workers' compensation law, and its
3  exclusivity provisions, apply to injuries incurred when "the
4  employee is performing service growing out of and incidental to
5  his or her employment and is acting within the course of his or
6  her employment."  Cal. Lab. Code § 3600(a)(2).  For the act to be
7  within the scope of employment, the person responsible for the
8  injury does not necessarily need to be acting in the interest of
9  his employer.  See Cole v. Fair Oaks Fire Protection Dist., 43
10 Cal. 3d 148, 161 (1987) (holding that "[s]ome harassment by
11 superiors when there is a clash of personality or values is not
12 uncommon" and is furthermore to be expected in the workplace);
13 Fretland v. County of Humboldt, 69 Cal. App. 4th 1478, 1488 n.7
14 (1999) (opining that decisions holding that sexual harassment
15 falls outside the scope of employment, such as Farmers Insurance
16 Group v. County of Santa Clara, 11 Cal. 4th 992 (1995), have no
17 bearing on the applicability of the workers' compensation law to
18 assault and battery claims).  Significantly, battery and assault
19 resulting from "horseplay" is viewed by California courts as
20 being within the scope of employment and actionable under the
21 workers' compensation act, even though this conduct goes beyond
22 the purposes of employment.  Torres v. Parkhouse Tire Serv.,
23 Inc., 26 Cal. 4th 995, 1106-07 (2001).

24        The incidents alleged by plaintiff--a kick to the
25 buttocks and battery with a chair--involve conduct that one might

26

27

28

18

1  expect in the workplace[9] and these claims must be brought under

2  California's workers' compensation law unless an exception to the

3  exclusivity provisions applies.[10]   See Torres, 26 Cal. 4th at

4  1002-03 (holding that an intentional tort committed by aggressive

5  physical conduct is actionable only under workers' compensation

6  law unless tortfeasor intended to injure).  Citing California

7  Labor Code § 3602(b)(1), plaintiff argues that such an exception

8  applies here.  Section 3602(b)(1) renders the exclusivity

9  provisions inapplicable when "the employee's injury . . . is

10 proximately caused by a willful physical assault by the

11 employer."  Cal. Lab. Code § 3602(b)(1) (emphasis added).

12 Liability under this section must, however, "be based on positive

13 misconduct by the employer and not on a theory of vicarious

14 liability such as that which forms the basis of the doctrine of

15 respondeat superior."  Fretland, 69 Cal. App. 4th at 1487.   In

16 other words, the employer must ratify, or "adopt in some manner

17 as [its] own[,] an act which was purportedly done on [its] behalf

18 by another person . . . ."  Id. at 1490-91.

---

19

20     [9]    See Torres, 26 Cal. 4th at 1007 ("Given the 'the
    propensities and tendencies of mankind and the ordinary habits of
21 life, it must be admitted that wherever human beings congregate,
    either at work or at play, there is some frolicking and
22 horseplay.'" (quoting Pac. Employers Ins. Co. v. Indus. Accident
    Comm'n, 26 Cal. 2d 286, 294 (1945))).

23     [10]   Significantly, the workers' compensation law does not
    bar FEHA claims based on these same acts or allegations of a
24 negligent response to sexual harassment because these claims are
    based on accusations of discrimination, which "is not a normal
25 risk of the compensation bargain."  Fretland, 69 Cal. App. 4th at
    1492 (emphasis added).  Therefore, plaintiff's tenth cause of
26 action, for negligence, is still at issue in this case,
    regardless of the applicability of any exceptions to the workers'
27 compensation exclusivity provisions.  See id. (holding that the
    workers' compensation exclusivity provisions do not bar emotional
28 distress claims founded on discrimination).

1          In Fretland, the plaintiff was, among other things,

2     ordered to use unsafe equipment, verbally abused, subject to

3     threatening phone calls, ostracized by co-workers, and eventually

4     "propelled" by a co-worker/supervisor against a stair rail.  Id.

5     at 1482.  The physical abuse rendered him unable to work.  Id.

6     After an investigation, which produced conflicting stories, the

7     employer issued a simple "letter of warning."  Id. at 1491.

8     Despite the fact that plaintiff alleged that his repeated reports

9     of harassment fell on deaf ears and his assertions that the

10    battery was part of a larger discriminatory harassment campaign,

11    the court found these facts sufficient to establish that the

12    employer had not ratified the co-worker/supervisor's abuse.  Id.

13    Because plaintiff failed to rebut the employer's evidence of an

14    investigation into and reprimand for the incident, the court

15    affirmed summary judgment.  Id.

16         Similarly, defendant here investigated both incidents

17    where plaintiff claimed physical abuse and, after considering

18    conflicting stories, the investigators determined that

19    plaintiff's claims were unsupported.  (Rathe Decl. Ex. B (Perrigo

20    Report), Ex. D (Stannard Report).)  Defendant did, however, give

21    Steevers a letter of reprimand following the October 30, 2000

22    incident where he kicked plaintiff.  (Rathe Decl. Ex. B (Perrigo

23    Report at 10).)  Defendant also punished Kirkman for the incident

24    with the chair by suspending him for one day.  (SUF No. 88.)[11]

25    Plaintiff has produced no evidence, only her bald assertions, to

26    refute these facts, which demonstrate that defendant did not

27

28         [11]   Kirkman has since retired.  (SUF No. 52.)

1   ratify a willful physical assault on plaintiff.[12]   Cf. Fretland,

2   69 Cal. App. 4th at 1491.   Therefore, in accordance with

3   Fretland, the exclusivity provisions apply to plaintiff's

4   eleventh and twelfth causes of action and summary judgment on

5   these claims is warranted.

6              4.   Underlying Theories of Liability

7              Finally, defendant also moves for summary judgment on

8   plaintiff's "claims" for "retaliation" and "failure to promote."

9   However, as plaintiff admitted during oral argument, these are

10  not separate causes of action in the complaint.[13]   In the absence

11  of actual claims, the court will not grant or deny summary

12  judgment on these theories.

13  ///

14  ///

15  _____

16       [12]   As the Fretland court pointed out, "testimony [that]
    may arguably be relevant to prove the County actively
17  participated in discrimination . . . is not [necessarily]
    relevant to prove ratification of the assault and battery."  69
18  Cal. App. 4th at 1491.  Whether the workers compensation laws
    provide the exclusive remedy for an assault or battery claim
19  turns on whether the employer manifested approval of the
    perpetrator's conduct, not whether the employer sufficiently
20  punished him so as to deter future incidents (which, as
    previously noted, is relevant in an analysis of sexual harassment
21  claims).

22       [13]   The court recognizes that in the introduction to her
    complaint, plaintiff does lay the foundation for claims of
23  retaliation and failure to promote.  (Compl. ¶ 3 ("Plaintiff has
    been told by her supervisor that she will not be promoted further
24  constituting acts of discrimination and retaliation.").)
    However, plaintiff's complaint lacks a factual basis for such
25  claims because the events on which they might be based had not
    yet occurred when the complaint was filed and plaintiff has not
26  properly noticed a motion to amend.  See Johnson v. Mammoth
    Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992) (holding
27  that once the period for amending the pleadings, as specified in
    the scheduling order, has passed, plaintiff must properly notice
28  a motion to amend the complaint and the scheduling order).

III. <u>Conclusion</u>

Because plaintiff has named only the County, a local government unit, as a defendant in this case, her § 1983 claims can only be brought pursuant to the <u>Monell</u> theory of liability. Additionally, she cannot state claims for battery or assault in the workplace because the exclusive remedy for the acts alleged is a workers' compensation claim. Questions of fact remain, however, as to whether plaintiff was the victim of sexual harassment and the claims based on these allegations must therefore be decided by a jury.

IT IS THEREFORE ORDERED that defendant's motion for judgment on the pleadings be, and the same hereby is, GRANTED as to claims five, six, seven, and nine, and these claims are hereby DISMISSED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED as to claims eleven and twelve and in all other respects DENIED.

DATED:  June 1, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

22